UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DONTE THOMAS, # 397934,

        Petitioner,               Case Number: 1:17-cv-12895
                                           Honorable Thomas L. Ludington

v.

ROBERT NAPEL,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Donte Thomas, a Michigan prisoner, was convicted of armed robbery, Mich. Comp. Laws § 750.529, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. He is before this Court seeking a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner seeks habeas relief on the ground that his defense attorney was ineffective in failing to call an expert witness to testify about the fallibility of eyewitness identification. For the reasons set forth, the petition will be denied.

**I**.

Petitioner's convictions arise from the armed robbery of Robert Thomas III on July 1, 2013 in Detroit. Robert[1] testified that on the day in question, he was walking home from the corner store when two men started following him. Robert identified one of the men as Petitioner. Robert ran when the men started chasing him, but they grabbed him about a block from his home. The

---

[1] Because Robert Thomas III, his mother, Montyne Thomas, and Petitioner share a surname, the Court refers to the witnesses by their first names. Petitioner is not related to Robert or Montyne.

men took him to the back of a vacant home and threw him to the ground.  Petitioner held a gun to Robert's head.  While the other man held Robert down, Petitioner took everything from Robert's pockets, including Robert's money and cell phone.  Petitioner said, "I shot somebody at the bank and I'll shoot you next."  (ECF No. 6-4, PageID.163.)  Petitioner then pulled Robert's t-shirt over his head, told him to count to 100, and ran away.  Robert then found his mother looking for him on the street and she called police.  (*Id.* at PageID.177.)  Four days later, Robert saw Petitioner and told his mother "that's the guy" and they contacted police who arrested Petitioner.  (*Id.* at PageID.165.)

Montyne Thomas, Robert's mother, testified that on the morning of July 1, 2013, she sent Robert to the store.  While he was gone, she saw two men walking down the street.  She viewed them with suspicion because they looked like they were "up to no good."  (*Id.* at PageID.176.)  A short time later she saw these two men dragging someone behind a vacant house.  She did not realize the person being dragged was Robert until she heard him screaming.  She ran to her son and saw the two men running away.  Though she was unable to see their faces, Montyne was able to see that the men were black and that one wore a black jacket and the other a brown jacket.  Petitioner did not testify in his own defense.

A Wayne County Circuit Court jury found Petitioner guilty of armed robbery, felon in possession of a firearm, and felony firearm.  On January 29, 2014, he was sentenced to 12 to 30 years for armed robbery, 1 to 5 years for felon in possession, and 5 years for felony firearm. Petitioner filed an appeal of right in the Michigan Court of Appeals arguing that his trial attorney was ineffective and that the trial court lacked authority to impose court costs against him.  The

Michigan Court of Appeals affirmed Petitioner's convictions and the imposition of court costs. *People v. Thomas*, No. 320405, 2015 WL 4635001 (Mich. Ct. App. Aug. 4, 2015).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the ineffective assistance of counsel claim raised in the Michigan Court of Appeals and a claim that he was entitled to have his case remanded for resentencing under *People v. Lockridge*, 498 Mich. 358 (2015). The Michigan Supreme Court remanded the case to the trial court to determine whether it would have imposed a materially different sentence under the sentencing procedure established in *Lockridge* and, in all other respects, denied leave to appeal. *People v. Thomas*, 499 Mich. 964 (Mich. June 28, 2016).

Petitioner then filed this habeas corpus petition. (ECF No. 1.) He raises one claim for relief: trial counsel was ineffective for failing to call an expert witness on the unreliability of eyewitness identifications. Respondent filed an answer in opposition. (ECF No. 5). Petitioner has filed a reply brief. (ECF No. 7.)

**II**.

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. Pursuant to section 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. *Id.* Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.

Petitioner raises a single claim for habeas corpus relief. He argues that defense counsel was ineffective for failing to call an expert witness to testify regarding the limitations of eyewitness identifications.

An ineffective assistance of counsel claim has two components: the attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014), *quoting Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were

reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

> The Michigan Court of Appeals denied Petitioner's ineffective assistance of counsel claim:
>
> A trial lawyer's decision whether to secure a witness, including an expert witness, is normally a matter of trial strategy. *People v. Payne*, 285 Mich. App. 181, 190, 774 N.W.2d 714 (2009). In this case, Thomas' trial lawyer chose not to hire an expert to educate the jury about the limitations that inhere in eyewitness testimony. Instead, his trial lawyer elected to challenge the eye witness testimony on cross-examination. And a review of the record shows that his trial lawyer thoroughly and aggressively challenged both eyewitnesses on cross-examination to impeach their identification of Thomas as one of the perpetrators. On appeal, Thomas cites a great deal of secondary authority to support his contention that eyewitness identifications are intrinsically untrustworthy and authorities that recognize that an expert's testimony on eyewitness testimony may be helpful. But he cites no authority for the proposition that the prevailing professional norms require a trial lawyer to hire an expert under these circumstances. To the contrary, Michigan courts have already recognized that it is reasonable for a lawyer to use cross-examination for impeachment rather than expert testimony; there may, for instance, be a reasonable concern that a jury will "react negatively to perhaps lengthy expert testimony" that the jury perceives as "stating the obvious: memories and perceptions are sometimes inaccurate." *See People v. Cooper*, 236 Mich. App. 643, 658, 601 N.W.2d 409 (1999).
>
> In this case, Thomas' lawyer might have had a similar concern; his lawyer might have felt that hiring an expert to lecture the jury on the obvious would have had a negative impact on the jury's assessment of the evidence or appeared desperate. *Id.* Given the deficiencies in the witnesses' testimony, Thomas' trial lawyer might reasonably have concluded that the best way to establish reasonable doubt as to the eyewitnesses' identification would be through cross-examination. Consequently, Thomas has not overcome the strong presumption that his lawyer's decision fell within the range of reasonable professional conduct. *Gioglio*, 296 Mich. App at 2223.

*Thomas*, 2015 WL 4635001 at *1-2 .

The Michigan Court of Appeals' decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. The Supreme Court has recognized that eyewitness identification carries certain dangers such as unreliable memory or perception.

*United States v. Wade*, 388 U.S. 218, 235 (1967).  The Sixth Circuit has acknowledged that expert testimony on eyewitness identification is "'universally recognized as scientifically valid and of aid to the trier of fact."  *Jackson v. Bradshaw*, 681 F.3d 753, 762 (6th Cir. 2012) (quoting *Ferensic v. Birkett*, 501 F.3d 469, 482 (6th Cir. 2007)).

Yet "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and facts,' is 'virtually unchallengeable.'"  *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690).  In *Jackson*, the Sixth Circuit held that a trial attorney's decision not to present expert testimony on eyewitness identification was not unreasonable where potential weaknesses in the eyewitnesses' identification were demonstrated through cross-examination and closing arguments. *Jackson*, 681 F.3d at 762-63.  "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment."  *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).

In this case, defense counsel challenged eyewitness testimony through cross-examination.  He questioned Robert about discrepancies between the description he gave police of the perpetrator and Petitioner's actual appearance.  For example, Robert described Petitioner to police as approximately 5' 9" tall and weighing 140-150 pounds; but Petitioner is 5' 11" and 240 pounds.  Defense counsel also cross-examined Montyne Thomas about her description of the men she saw running away from the vacant house.  She described the man with the gun as weighing approximately 140-160 pounds, which, like her son's description, was up to 100 pounds lighter than Petitioner's actual weight – a significant difference.

- 7 -

Petitioner presents no evidence that he has an expert witness who would be willing to testify regarding eyewitness identification. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call an expert witness to testify at trial. *Id.* at 557 (6th Cir. 2007) (rejecting petitioner's ineffective-assistance claim arising from counsel's failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been").

Applying AEDPA's doubly deferential standard of review, it was not unreasonable for the Michigan Court of Appeals to conclude that counsel's decision to rely on cross-examination rather than retaining an expert was within the wide range of reasonable defense strategies and that Petitioner was not prejudiced by defense counsel's decision. The Court denies relief.

**IV.**

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted). Reasonable jurists would not find the Court's

assessment of the petition to be debatable or wrong. Therefore the Court will decline to issue a certificate of appealability.

**V.**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, and a certificate of appealability are **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that leave to proceed *in forma pauperis* on appeal is **DENIED** because an appeal from this decision cannot be taken in good faith. *See* FED. R. APP. P. 24(a).


Dated: May 5, 2020               s/Thomas L. Ludington
                                 THOMAS L. LUDINGTON
                                 United States District Judge


PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Donte Thomas** #397934, MARQUETTE BRANCH PRISON, 1960 U.S. HWY 41 SOUTH, MARQUETTE, MI 49855 by first class U.S. mail on May 5, 2020.

                             s/Kelly Winslow
                             KELLY WINSLOW, Case Manager